UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KRISTEN SILLOWAY, et al.,<br><br>    Plaintiffs,<br><br>    v.<br><br>CITY AND COUNTY OF SAN FRANCISCO,<br><br>    Defendant. | Case No. 20-cv-07400-RS (AGT)<br><br>**DISCOVERY ORDER**<br>Re: Dkt. No. 119 |

By June 12, 2025, plaintiffs must identify the nurses who plaintiffs contend CCSF prevented from working a regularly scheduled shift, involuntarily sent home from a shift, scheduled for fewer hours than their full-time equivalency, or denied the opportunity to work a regularly scheduled shift pursuant to the 2024–2027 MOU. For each nurse identified, plaintiffs must provide the date of each specific instance recalled.

The above discovery is relevant to a material factual issue: "whether staff nurses are guaranteed the opportunity to work the hours corresponding to their full-time equivalency every week." *Silloway v. City & Cnty. of San Francisco*, 117 F.4th 1070, 1077 (9th Cir. 2024). Plaintiffs' arguments opposing this discovery are not convincing.

First, plaintiffs insist that the discovery will be too burdensome because counsel will need to contact all 208 opt-in staff nurses to identify which of them were involuntarily sent home or denied the opportunity to work. Burdensome? Yes. Unduly burdensome? No. The requested discovery is important; it is relevant to a material issue identified in *Silloway*, 117

F.4th at 1077. Also, plaintiffs' counsel don't deny that they have the opt-in nurses' contact information, which will make obtaining this discovery easier.

Second, plaintiffs contend that the discovery is unnecessary because CCSF has payroll records from which it can identify when it involuntarily sent nurses home or denied them the opportunity to work. CCSF, however, says it is unaware "of any staff nurse being sent home or denied the opportunity to work a normal shift." Dkt. 119 at 3. In other words, CCSF suggests that, based on its records, the answer to its questions (e.g., how many staff nurses did CCSF prevent from working a regularly scheduled shift?) is zero. CCSF may ask plaintiffs the same questions to see if they have a different answer.

Third, plaintiffs assert that CCSF has exceeded the limit of 25 interrogatories. "One interrogatory directed to 208 individual parties . . . is 208 interrogatories," plaintiffs say. Dkt. 119 at 3. Judge Seeborg limited interrogatories to 25 "per party," dkt. 92 at 2, and "[t]he FLSA leaves no doubt that every plaintiff who opts in to a collective action has party status." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1104 (9th Cir. 2018) (simplified). CCSF, then, could have asked each opt-in nurse to answer up to 25 interrogatories, but has asked for much less. The fact that in a separate case, *Davis v. County of Napa*, No. 21-cv-04603-JCS (N.D. Cal.), which plaintiffs cite, the parties stipulated to more restrictive limits on discovery from opt-ins is irrelevant. *See id.*, Dkt. 52. No such stipulation was entered here.

Finally, plaintiffs float the idea of a sampling, whereby they would ask only a subset of opt-ins to respond to CCSF's requests. The Court isn't persuaded that such a sampling would be adequate for discovery purposes. Although the parties' experts may choose to use only some of the opt-in nurses' data to analyze CCSF's payroll decisions, CCSF reasonably wants to gather relevant data from all the opt-in nurses before deciding how to use it. The

opt-ins have "party status," *Campbell*, 903 F.3d at 1104 (simplified), so CCSF can ask them for this discovery.

* * *

The discovery CCSF seeks is relevant, and plaintiffs haven't established that "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Plaintiffs must accordingly provide it.

As for timing, the deadline set in this order, June 12, 2025, is 30 days from today and should give plaintiffs enough time to contact the opt-ins and obtain answers to CCSF's questions. CCSF asked for an earlier deadline, May 2, 2025, but didn't do so until April 29, 2025, only three days before the proposed deadline. *See* Dkt. 119 at 2. Three days would have been (and remains) too tight a turnaround. Also, if May 2, 2025, was a critical deadline, CCSF could have requested it much earlier than April 29.

To the extent CCSF believes it cannot meet tomorrow's expert disclosure deadline without the discovery authorized in this order, CCSF may seek relief from Judge Seeborg. To conserve resources, hopefully the parties can stipulate to such a request if necessary.

**IT IS SO ORDERED.**

Dated: May 13, 2025

_____
Alex G. Tse
United States Magistrate Judge