UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

United States District Court
Northern District of California

KRISTEN SILLOWAY, et al.,

Plaintiffs,

v.

CITY AND COUNTY OF SAN FRANCISCO,

Defendant.

Case No. 20-cv-07400-RS

**ORDER DENYING PLAINTIFFS' MOTION TO BIFURCATE TRIAL**

## I. INTRODUCTION

In this collective action under the Fair Labor Standards Act (FLSA), dual-status nurses claim that the City and County of San Francisco failed to pay them time-and-a-half premiums for overtime work as statutorily required. Defendant argues that it is exempt from that requirement, as the nurses at issue were engaged in bona fide professional work. A key issue in the case is whether the nurses were paid on a salary basis; if so, they were not due overtime under the statute. If not, however, issues become more complicated. Damages, if any, for unpaid overtime would vary based on factors like whether the payment on a non-salary basis was universal and willful or instead merely sporadic and the product of good faith mistakes. To account for both outcomes on each factor, the parties will likely need to present several alternative damages models.

Plaintiffs contend that a jury deciding the trial in a single phase is likely to be confused if they must navigate this thicket of damages issues while adjudicating liability. To minimize that complexity, Plaintiffs move to bifurcate the trial into two phases. First, the jury would adjudicate

liability and willfulness.[1] Then, as necessary, the second phase would ask the jury to calculate damages based on the earlier determinations. Defendant counters that bifurcation is the exception rather than the norm in the Ninth Circuit and argues that it is neither warranted nor appropriate here because it would artificially decouple issues that are inextricably intertwined. For the reasons explained below, Plaintiffs' motion is denied.

## II. BACKGROUND

As the parties are familiar with the case, the background here includes only those key facts necessary to understand the instant motion. Plaintiffs represent a collective action group of nurses who opted into the litigation. These nurses are deemed "dual-status" nurses because they are staff nurses for the City but also earn additional pay by volunteering to work "per-diem" shifts, which are opportunities offered by the City as needed to fill staffing shortfalls. Staff nurses receive 150 percent of their normal hourly rate when working overtime during their normal shifts, but they receive only 125 percent of that rate for per diem shifts "regardless of whether they have worked more than, less than, or exactly 40 hours of regular shifts in the applicable week." *Silloway v. City and County of San Francisco*, 117 F.4th 1070, 1073 (9th Cir. 2024). Conversely, staff nurses may earn less money if they choose to work less than a full-time equivalent (FTE) schedule, proportionally reducing their compensation. A nurse can also be paid less than normal compensation if he or she takes off more time than he or she accrued in designated leave banks or arrives late to a shift without permission. However, for nurses compensated on a salary basis, the employer cannot underpay them simply because it decides their labor is not needed for a given hour or shift.

Under the FLSA, employees are generally entitled to time-and-a-half overtime pay when

---

[1] Plaintiffs also proposed to have the jury adjudicate good faith during this phase of trial. However, good faith and liquidated damages are issues properly decided by the court, according to the statute. 29 U.S.C. § 260. That provision explains that for claims for unpaid overtime under the FLSA, "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation," then "the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title." *Id.*

they work more than forty hours in a week. 29 U.S.C. § 207(a)(1). However, an employer need not pay overtime to employees "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The City here contends that the nurses meet the three legal criteria for bona fide professionals. The Plaintiffs agree that they meet two of these criteria but deny that they meet the third, known as the "salary basis test." The City has two options to show the nurses meet that test. First, under 29 C.F.R. § 541.602(a), it can show the employee receives "on a weekly, or less frequent basis, a predetermined amount constituting all or part of the employee's compensation, which amount is not subject to reduction because of variations in the quality or quantity for the work performed." Second, the city can advance under 29 C.F.R. § 541.604(b), which allows hourly, daily, or shift-based compensation if the employment guarantees "at least the minimum weekly required amount paid on a salary basis regardless of the number of hours, days or shifts worked," and if there is a "reasonable relationship" between "the guaranteed amount and the money actually earned." *Silloway*, 117 F.4th at 1074-75.

The City can make permissible deductions from that pay in specified circumstances, namely for times when the employee chooses not to work. Under § 541.602(b), most employers can make such deductions for full-day absences taken for personal reasons. As a public employer, the City can also make more granular deductions under § 541.710's "public accountability principle," deducting pay even for partial-day absences. However, outside of those permitted modes, deductions are improper. An employer with "an actual practice of making improper deductions" will lose the benefit of the professional-employee exemption and will therefore be required to pay overtime premiums. 29 C.F.R. § 541.603(a). The breadth of that loss of exemption depends on the scope of the improper deductions. Under § 541.603(b), "the exemption is lost during the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the actual improper deductions."

In this case, Plaintiff nurses claim they should be "entitled to time-and-a-half pay whenever they work more than 40 hours in a week, even if they only do so because they pick up per-diem shifts." *See Silloway v. City and County of San Francisco*, No. 20-cv-07400-RS, 2025

WL 3675116, at *2 (N.D. Cal. December 17, 2025). They proceeded under the form of a collective action for this alleged violation of the FLSA, arguing that the City had a universal policy of making improper deductions and thus owes higher overtime rates to every Plaintiff for the period covered by the relevant statute of limitations. Put differently, Plaintiffs contend the relevant managers are top-level city officials who set the relevant pay policies, so the affected employees include all the Plaintiffs regardless of who their immediate supervisors are. The Defendant rejects these contentions, maintaining that it pays nurses on a salary basis and thus does not owe additional overtime pay, or alternatively, that any loss of exemption is narrow and applies only to certain nurses at certain times.

The parties filed cross-motions for summary judgment in 2022, and Defendant's motion was granted. In 2024, the Ninth Circuit reversed that ruling and remanded the case for further proceedings. Plaintiffs moved for partial summary judgment, Dkt. 147, while Defendant again moved for summary judgment and decertification of the class, Dkt. 153, 154. All these motions were denied.

As the case heads toward its conclusion, Plaintiffs move to bifurcate the trial into two phases. In the initial phase, the jury would decide liability, as well as good faith—which precludes liquidated damages—and willfulness, which would extend the statute of limitations and thus the relevant damages period from two years to three. In the second phase, after adjudication of any pure legal questions by the court, the jury would determine what if any damages are owed to Plaintiffs. Defendant opposes this motion, arguing that bifurcation would not promote efficiency but would instead unfairly prejudice the City's ability to present its § 603(b) defense.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 42(b), trial courts have broad discretion to bifurcate trials "to avoid prejudice, or to expedite and economize," so long as the court "preserve[s] any federal right to a jury trial." F.R.C.P. 42(b); *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002). If bifurcation would not infringe on either party's jury trial rights, courts channel their broad discretion through factors such as (1) the separability of the issues; (2) the extent to

United States District Court
Northern District of California

which bifurcation would increase judicial economy and reduce the risk of jury confusion; and (3) the risk of prejudice to either party. *See Clark v. I.R.S.*, 772 F. Supp. 2d 1265, 1269 (D. Haw. 2009), *Facebook v. OnlineNIC Inc.*, No. 19-cv-07071-SI, 2022 WL 1016670, at *3 (N.D. Cal. April 5, 2022). Rule 42 indicates that "[w]hile separation of issues for trial is not to be routinely ordered, it is important that it be encouraged where experience has demonstrated its worth." F.R.C.P. 42(b), Advisory Committee Notes to the 1966 Amendment. "In the Ninth Circuit, bifurcation is the exception, rather than the rule of normal trial procedure." *Facebook*, 2022 WL 1016670, at *3.

## IV. DISCUSSION

The concerns Plaintiffs highlight here do not warrant the unusual measure of bifurcating the trial into liability and damages phases. While bifurcation *might* simplify aspects of the jury's task in this case, it could also unduly complicate matters and bloat the trial schedule through duplicative testimony and evidence. Plaintiffs can adequately address their concerns about jury confusion and potentially misleading arguments by the City using other tools of trial procedure, such as jury instructions, motions in limine, and the like. True, it is unlikely that bifurcation would significantly prejudice Defendant, contrary to the City's argument. However, it is the moving party's burden to show that bifurcation is warranted. *Canchola v. Allstate Insurance Co.*, No. 8:23-cv-00734, 2025 WL 2373271, at *1 (C.D. Cal. July 3, 2025). Overall, Plaintiffs have not adequately shown that bifurcation will expedite the trial, so their motion is denied.

### A. Preservation of jury trial rights

As a threshold inquiry, bifurcation would be inappropriate if it infringed upon either party's federal rights to a jury trial. F.R.C.P. 42(b). Here, Plaintiffs' proposal would leave each party's jury trial rights undisturbed, because a jury would still try each issue in turn. Defendant does not dispute this point. So, this requirement poses no bar to bifurcation here.

### B. Separability of the Issues

Plaintiff argues that the issues of liability and damages are separable in this case, supporting bifurcation. Defendants disagree, claiming that their defense under 603(b) involves

United States District Court
Northern District of California

"intertwined" issues of liability and damages. Plaintiffs have the better of this argument.

The scope of liability in this case hinges on two questions: (1) did the City make improper deductions from at least some employees' expected work hours, and (2) if so, did it do so as part of a universal policy or merely through the actions of individual managers? The answers to those questions will determine whether and to what extent the City loses its exemption under the FLSA, which in turn will decide how many employees (if any) are owed additional overtime pay. Defendant intends to rely in part on the statutory protections of Section 603(b) to limit any loss of exemption to "the time period in which the improper deductions were made for employees in the same job classification working for the same managers responsible for the improper deductions." 29 C.F.R. § 541.603(b).

Defendant claims that liability and damages are inseparable because, in short, the scope of liability will determine the amount of damages. More specifically, the City argues that under 603(b), if there is no universal policy, then any "damages are limited to the time periods when improper deductions were made," so the issues are "inherently intertwined and must be considered together." However, the City fails to explain how this is different from the routine run of cases where the amount of damages depends on the scope of liability. Here, these issues seem to be intertwined in the way that liability and damages are always related.

The City also contends that adjudicating both issues at once will be more efficient, but that does not mean the issues are not separable. Whether a trial is bifurcated or not, the Defendant will have the opportunity to explain its theory that liability should be limited to specific nurses and times under § 603(b). In sum, Defendant's argument as to why these issues are inseparable is unpersuasive, so this factor poses no obstacle to bifurcation.

C. Economy and Confusion

Plaintiffs urge that bifurcation here would simplify the issues and avoid jury confusion. Defendant counters that bifurcation is unnecessary to avoid confusion and would require duplicative presentation of evidence, including calling multiple city officials at both phases of the trial. To help adjudicate this issue, the parties were asked to propose verdict forms reflecting their

preferred trial format.

The City is correct that the potential to moot the issue of damages is not sufficient to justify bifurcation in the average case. *Jones v. National Railroad Passenger Corp.*, No. 15-cv-02726-TSH, 2018 WL 660247, at *5 (N.D. Cal. Dec. 17, 2018). So, the question is whether this case is the unusual one where bifurcation is appropriate. Plaintiffs say it is, touting that a split trial would promote efficiency and clarity. However, based on the parties' briefing and those proposed forms, bifurcation is not necessary for judicial economy or avoidance of confusion here.

*1. Judicial Economy and Efficiency*

Plaintiffs contend that bifurcation would promote efficiency because damages depend on several binary factors, which would complicate a unified trial and require each party to present evidence and testimony supporting multiple alternative damages calculations. Specifically, they claim that each party would need to account for different outcomes on willfulness, good faith, the significance of various other forms of premium pay as offsets to net overtime payments due, and potential nurse-by-nurse adjudication reflecting the Defendant's § 603(b) defense. However, the problem is not so dire as Plaintiffs claim, nor is it clear that bifurcation solves this complexity.

A few of these arguments can be dispatched easily. First, as noted above, good faith is an issue for the court "in its sound discretion," 29 U.S.C. § 260, eliminating one layer of complexity for the jury. Second, juries are routinely asked to consider multiple variations of damages calculation, so it is not necessarily too confusing if each party presents several alternative models. Third, Plaintiffs acknowledge that many of the thorny issues around damages could and should be resolved by stipulations, motions in limine, or other pre-trial motions.

The more fundamental problem for Plaintiffs' motion is that bifurcation would not reduce the complexity but instead would merely punt the issue from the liability phase of trial to the damages phase. There are two chief sources of complexity in calculating damages here. The first is whether the City lost the exemption universally as a result of a general policy, or only in isolated times and for nurses working under specific supervisors. The City paints the first issue as inextricably linking liability and damages, arguing that bifurcation will prevent it from raising its

United States District Court
Northern District of California

603(b) defense. As noted above, this objection is off target, as the jury could still determine in a bifurcated trial that the City only lost the exemption at specified times, leaving it to the damages phase to translate that liability determination into damages. More to the point, a jury that finds liability will need to make these liability determinations and resulting damages calculations at some point, regardless of whether the trial is bifurcated. Because liability depends on whether the City had an actual practice of making improper deductions, Plaintiffs and Defendant will need to present nurse-by-nurse evidence at the first stage of trial, whether or not it is bifurcated. As such, it makes little difference whether the jury makes the individualized determinations at the first or second stage; in other words, bifurcation provides no real advantage.

The second source of complexity is that the jury must decide the extent to which other premium pay the nurses received should be deducted from any unpaid overtime the jury determines they are owed. This question appears to present complicated fact issues; Plaintiffs' proposed verdict form used some fifty different questions to adjudicate each potential form of premium pay. However, bifurcation would not resolve that complexity but would merely defer it to a second phase of trial. Simplifying these issues would be better accomplished by stipulations or legal findings conveyed via jury instructions.

On the other side of the ledger, Defendants argue that bifurcation will require putting on duplicative testimony, including calling multiple city officials and experts to testify at both phases of trial. Plaintiffs rightly question Defendant's claims on this front, arguing that "any witness duplication will not be significant." Nonetheless, bifurcation will likely require at least some witnesses to appear twice and could spawn additional disputes during the first stage of trial over the scope of permitted testimony. This duplication thus weighs against the Plaintiffs' motion, even if only slightly.

Although a single trial will require some testimony on alternative damages calculations that may ultimately prove unnecessary, the overlap of liability and damages issues suggests that adjudicating the issues at once will be more efficient. This is especially true in light of the high number of issues that Plaintiffs indicate the parties could simplify by stipulations.

2. *Preventing Jury Confusion*

Separately, Plaintiffs highlight the risk that Defendant—intentionally or not—will confuse the jury by conflating liability and damages questions unless bifurcation puts a hard barrier between them. As Plaintiffs note, liability depends on determining the scope of any improper deductions, that is, occasions where the City did not pay nurses their expected wage because they were prevented from working their allotted number of hours. Once liability is established, damages depend on the number of overtime hours each nurse worked, multiplied by their base salary rate and potentially offset by certain other premium pay already tendered. As Plaintiffs tell it, the City illustrated how confusing these issues might be during the deposition submitted by Plaintiffs in support of their motion, at which Defendant's counsel repeatedly asked why individual nurses who did not suffer "shortfalls"—improper deductions—should receive additional pay. Plaintiffs' Mot. to Bifurcate, Exh. A. As explained above, any damages in this case would compensate nurses for the additional pay allegedly due for overtime work, not for shortfalls in their base pay created by any improper deductions. Whether a given nurse was subject to improper deductions from their base pay speaks only to *liability* with regard to that individual and others working under the same manager, by establishing whether that employee was paid on a salary basis. If liability is established, the extent of the improper deductions imposed on a given individual would have no relationship to the damages potentially owed to them by the City. On that basis, Plaintiffs argue there is no reason to confuse the jury by simultaneously presenting evidence on both (1) "shortfalls" in regular hours reflecting improper deductions and (2) overtime hours creating potential damages. The latter number has no bearing on liability, whereas the former number is relevant almost exclusively to liability.

Plaintiffs are likely correct that bifurcation would do some work to avoid confusion on this front by starkly separating the issues. However, it is less clear that bifurcation is necessary or sufficient to prevent this confusion. Some misunderstanding of these complicated issues is likely inevitable. Even in the liability phase of a bifurcated trial, the City could validly present its § 603(b) defense and single out individual nurses, supervisors, and time periods as it tries to convince the jury that any improper deductions were isolated mistakes. To some extent, such

arguments have the propensity to confuse jurors, given that the bumper sticker for the case likely focuses on unpaid overtime rather than the technicalities of the salary basis test. So, splitting the trial alone will be insufficient to prevent confusion entirely.

Moreover, bifurcation is a blunt instrument, and its power to minimize confusion must be weighed against its costs as well as the costs and benefits of more precise tools. Plaintiffs acknowledge in their proposed verdict form that many issues could be resolved by stipulations—including some 50 questions addressing whether the many types of premium pay count as FLSA overtime or not. Plaintiffs also have other tools available to keep the jury on track. They can use motions in limine to prevent misleading lines of questioning or evidence, seek jury instructions that clarify the issues, and use their own opening and closing statements and presentation of evidence to explain the issues clearly and prevent confusion. Unlike bifurcation, none of these will require duplicative testimony, and they offer the parties the ability to target the specific points of confusion at trial more precisely. In sum, it is unlikely that bifurcation would significantly promote judicial economy or reduce the risk of juror confusion, especially compared to other, more precise tools available to Plaintiffs to address these issues.

D. Potential unfair prejudice

In line with its objections noted above, Defendant argues that bifurcation would be an implicit ruling on the merits, blocking it from presenting its 603(b) defense—that any shortfalls were the result of individual manager decisions or mistakes rather than a universal policy. This objection is unpersuasive. Even in a bifurcated trial, the City would have ample opportunity during the liability phase to substantiate this defense, which would in turn shape the jury's adjudication of damages at the second phase. A two-stage trial thus would not prejudice the Defendant unfairly.

That said, the same is true for the other side. Plaintiffs' arguments about juror confusion could be construed as highlighting potential prejudice from a single trial. However, for the reasons explained above, bifurcation is neither necessary nor sufficient to address those concerns. As such, holding a single trial of both liability and damages would not unfairly prejudice the Plaintiffs.

United States District Court
Northern District of California

## V. CONCLUSION

Summarizing the factors outlined above, two of the factors would permit—but not urge—bifurcation, because the issues are separable, and splitting them would not infringe on any jury trial rights. The fourth factor is neutral, as neither format is likely to prejudice unfairly either party. The key inquiry is thus the third factor: whether splitting the issues would promote judicial economy and prevent jury confusion to a sufficient degree to overcome the general preference in the Ninth Circuit not to bifurcate trials. Here, the City's arguments are more persuasive, as explained above. Accordingly, Plaintiffs' motion is denied, and the trial will not be bifurcated.

**IT IS SO ORDERED**.

Dated: November 17, 2026



RICHARD SEEBORG
United States District Judge